ROSA, PLAINTIFF AND APPELLANT, *v.* DÍAZ ET AL., DEFENDANTS AND APPELLEES.

APPEAL from the District Court of Arecibo in an Action for Resolution of Contract.

No. 2778.—Decided April 2, 1923.

CONTRACT—ALIENATION—DISPOSING OF PROPERTY—MORTGAGE.—The owner of a property who by a private contract had agreed with a creditor *not to dispose of* the same before having paid the debt does not violate his contract in mortgaging the property to another person, for the general, usual and grammatical meaning of "dispose of" conveys the idea of transferring to another person the ownership and control of a thing, alienating it by any of the means which finally take it out of his possession, as by gift, sale, renunciation or conveyance, and one who mortgages a property does not definitely part with its ownership.

The facts are stated in the opinion.

*Mr. L. Mercader* for the appellant.

*Messrs. Largé & Zeno* for the appellees.

MR. JUSTICE ALDREY delivered the opinion of the court.

In a private instrument dated May 8, 1921, the brothers José and Ramón Díaz Agueda acknowledged a debt of $2,395.22 to Lucas Rosa Ruiz and agreed to pay it, without interest, in ten annual instalments, or within a shorter time if they found it possible. The third clause of the instrument contains the following stipulation:

''For the performance of this obligation we bind ourselves and all property that we now have or may have, and we renounce all rights that the law gives us, agreeing not to dispose of our property until the said debt has been paid.''

On October 18, 1921, the Díaz Agueda brothers mortgaged a property of from 41 to 45 acres of land belonging to them to a third person to secure a loan of $400 and interest at twelve percent payable in two years on the condition that if they failed to pay two consecutive quarterly instalments of the interest the whole debt should be considered due, and on January 4, 1922, Lucas Rosa Ruiz brought suit against the Díaz Águeda brothers to recover his credit of $2,395.22 on the ground that the creation of the mortgage without his consent was a violation of their contract with him. The defendants defended and after trial judgment was rendered dismissing the complaint, whereupon the plaintiff took the present appeal.

The whole issue in this case depends upon the meaning and scope of the words ''dispose of'' used in the third clause of the contract between the parties, the appellant contending that in mortgaging their property without his consent the defendants disposed of it in violation of the contract and that for this reason they are now obliged to pay the whole debt.

According to the Dictionary of the Spanish Academy the words ''to dispose of'' mean: ''To act freely in the destination or alienation of one's property by gift, sale, relinquishment, etc.'' Webster's Dictionary defines the phrase ''to dispose of'' as follows: ''To transfer to the control of some one else, as by selling; to alienate; to part with; to relinquish; to bargain away.'' The Century Dictionary and Cyclopedia gives the same definition.

These definitions show that the general, usual and grammatical meaning of the words involve the idea of transferring to another person the ownership and control of some-

thing by parting with it by any of the means which definitely take it out of one's possession, as by gift, sale, relinquishment, or alienation; and this was undoubtedly the meaning that the contracting parties had in mind, because it is a matter of general knowledge.

But if the parties were contemplating the legal meaning of those words, we must also conclude that it is the same, for Falcón, professor of civil law in the University of Barcelona, Spain, in his commentaries on the Civil Code, volume 2, 4th ed., p. 123, says:

"The right of ownership, as we have seen, is based on two fundamental attributes: The power to possess and the power to dispose of. The Romans expressed the two ideas with the words *'utere et abutere'*. Our codes translate these two words as to possess and to dispose of: To possess or use when one uses the thing himself; to dispose of when one grants to another the ownership in whole or in part. The two powers together constitute ownership proper."

In Bouvier's Law Dictionary, Vol. I, p. 888, the definition is as follows: "Dispose. To alienate or direct the ownership of property, as, disposition by will." In Words & Phrases Judicially Defined, Vol. 3, p. 2114, dispose of is said to mean "to alienate; to effectually transfer." A similar definition is given in 18 C. J. 1279. In 2 C. J. 1036, it is said that ordinarily a mortgage or other lien upon land is not, technically speaking, an alienation, for the reason that, while it may finally result in an alienation, it is not in itself a complete and absolute transfer of title. And in the case of *Bryan* v. *Traders' Insurance Co. of Chicago,* 145 Mass. 389–392, where an insurance policy on a house stipulated that the policy should be void if the property were sold, and the house was mortgaged, it was held that the mortgage did not void the policy because a mortgage is not a sale.

It is true that according to section 354 of the Civil Code

ownership confers the right to enjoy and dispose of a thing and that one way of disposing of a property is by mortgaging or leasing it, but this does not mean that by the mortgage or the lease the owner has disposed of his property within the meaning of the words "to dispose of," for he continues to be its owner.

For the foregoing reason we conclude that in mortgaging their property the defendants did not breach the contract in which they agreed not to dispose of it until their debt to the plaintiff had been paid; therefore, the judgment dismissing the complaint must be

*Affirmed.*

Justices Wolf and Hutchison concurred.

Chief Justice Del Toro and Justice Franco Soto dissented.

DISSENTING OPINION OF MR. CHIEF JUSTICE DEL TORO, IN WHICH MR. JUSTICE FRANCO SOTO CONCURRED.

This is an action for the resolution of a certain contract. The defendants took issue and the district court sustained their defense. After a careful study of the matter I am of the opinion that the district court erred and, therefore, that its judgment should be reversed and substituted by another sustaining the complaint.

It clearly appears from the record that the plaintiff and the defendants entered into a contract as follows:

"In the town of Hatillo on the 8th day of May, 1921, Lucas Rosa Ruiz, unmarried, of age, property owner, farmer and resident of Hatillo, ward of Capez, of one part, and the brothers José and Ramón Díaz Agueda, of age, unmarried, and resident of Hatillo, ward of Naranjito, of the other part, contract as follows: Having the necessary legal capacity to enter into the following private contract, which we desire to have the same force and validity as if embodied in a public instrument, we enter into the said contract under the following terms: First: The brothers Díaz Agueda owe to Lucas Rosa Ruiz, or to his order, the sum of $2,395.22,

which is the result of a liquidation of the account between the said Rosa and our step-father, Froilan López, and we bind ourselves to pay this amount to Lucas Rosa in ten years, without interest.— Second: This amount is to be paid to the said Rosa in yearly instalments, according to the first clause of this agreement, or within a shorter time if it should be found possible to do so.— Third: For the performance of this obligation we bind ourselves and all property that we now have or may have, and we renounce all rights that the law gives us, agreeing not to ·dispose of our property until the said debt has been paid.—Fourth: In the event that we shall not have paid the whole of the said amount within the term agreed upon, the said Rosa shall be under the obligation to grant some extension of time.—Lucas Rosa accepts this contract in all of its parts, as being in accordance with the agreement.— For the protection and use of both parties they sign this contract in duplicate, one copy for each of them, before the undersigned witnesses, on the date mentioned.—(Signed) José Díaz.—Ramón Díaz.—Lucas Rosa.—José Padilla.—José Delgado Toledo.''

On October 18, 1921, or a few months after the making of the said contract, the defendants, without the consent of the plaintiff, mortgaged the property to which the contract refers and which they agreed not to dispose of, to secure a certain loan of $400 from Inocencia Peraza and her husband, Francisco García. The loan was payable in two years, interest to be paid quarterly, on the condition that upon failure to pay for two consecutive quarters the whole obligation should become due. ·

When the plaintiff learned of the creation of the said mortgage he demanded of the defendants that they secure their debt to him in some other manner. The defendants, who had no other property but that which they had agreed not to dispose of and thereafter mortgaged, refused to give the new security asked for by the plaintiff, and the plaintiff thereupon brought the present action, praying for a judgment declaring the resolution of the obligation contained in the contract of May 8, 1921, and the rescission of the agree-

ment and adjudging the defendants to pay the plaintiff the sum of $2,395.22 and the costs.

The first question to be considered and decided is, in my opinion, the following:

Did the defendants breach the contract? Let us see.

They agreed to pay to the plaintiff the sum of $2,395.22, without interest, in ten annual instalments, and for the performance of their obligation they agreed *"not to dispose of our property until the said debt has been paid."*

Did they dispose of their property? It is a fact that they mortgaged it. Did this amount to disposing of it, in the first place, and if so was such disposing of it a breach of the contract?

According to subdivision 2 of section 354 of the revised Civil Code, "ownership confers the right *to enjoy* and *dispose of* things without further limitations than those established by law." Section 348 of the old Civil Code reads as follows: "Ownership is the right *to enjoy* and *dispose of* a thing, without further limitations than those established by law." (Italics ours.)

In commenting on "right to dispose of" referred to in section 348, *supra,* Scaevola says: "The code uses this word as referring to the power of the owner to alienate, *encumber,* transform, destroy, etc., the thing." (Italics ours.)

Sánchez Román, speaking of the right of ownership, refers to the Roman definition of it as follows: *Jus utendi, fruendi, abutendi, disponendi et vindicandi,* and in explaining *jus disponendi* he says:

"By *jus disponendi* the Romans meant the power to dispose of vested in the owner of things under his dominion, that is, to alienate, encumber, transform them, etc."

Afterwards, in speaking of *free disposal,* he expresses himself as follows:

"By this provision the owner can alienate his property for a

good or a valuable consideration by acts *inter vivos* or *mortis causa,* purely, conditionally or on instalments * * * He may also. *encumber* them and *limit* his power, which is something like a partial alienation, subjecting them to other rights of mortgage, pledge, annuity, servitude, etc. * * * "

See *Estudio de Derecho Civil* by Felipe Sánchez Román, vol. 3, p. 91 *et seq.*

In his *Diccionario Razonado de Legislación y Jurisprudencia* Escriche, fixing the scope of the word *alienation,* less extensive than *disposition,* says:

"Alienation. The act by which the ownership of property is transferred to another for a good consideration, as a gift, or for a valuable consideration, as a sale or exchange.—This word, taken in its broadest meaning, includes also emphyteusis, pledge, mortgage and even the creation of a servitude. It follows that one who can not alienate a thing can not bind it or subject it to a mortgage, or to a servitude. 'He who is forbidden to alienate a thing,' says law 10, tit. 33, 7th *Partida,* 'can not sell, exchange or pledge it, nor create a servitude or an annuity thereon in favor of any of the persons to whom he is forbidden to alienate it.' "

In accordance with the foregoing citations it may be concluded that to mortgage is to dispose of, and thus the first part of the question propounded is answered in the affirmative. Now, this of itself is not sufficient.

Is the mortgage created by the defendants in this case an actual *disposition of the property in contravention of the agreement?* There is no doubt that the consent of the plaintiff to a long time for the payment of the debt acknowledged by the defendants was in consideration of the security which he was given by their continuing in possession of the property, cultivating it and selling its products, etc., but without alienating it or disposing of it in such a way as to destroy or diminish the security.

Perhaps it could not be concluded in all cases that a mortgage will have the effect of diminishing the value of

a property. In many instances an enterprising, active and capable owner of a property may borrow money on a mortgage to invest in cattle, cultivation and improvement of the property and the result will not be a decrease but an increase in its value. But as a general rule in mortgaging a property, leaving aside the use made of the money and considering the property alone, it is considered that the value of the property is diminished at least in an amount equal to the mortgage lien encumbering it.

Although the loan in this case is small, a fact which has caused us to hesitate in forming our opinion, as the value of the property is also relatively small and as the evidence shows that the defendants had no other property and upon demand by the plaintiff to secure the debt in some other manner refused to do so, we think that the second and last part of the question presented must be answered also in the affirmative.

Therefore, the defendants having disposed of the property in violation of their contract with the plaintiff, the latter may seek relief under the following statutes:

"The right to rescind the obligations is considered as implied in mutual ones, in case one of the obligated persons does not comply with what is incumbent upon him.

"The person prejudiced may choose between exacting the fulfilment of the obligation or its rescission, with indemnity for damages and payment of interest in either case. He may also demand the rescission, even after having requested its fulfilment, should the latter appear impossible.

"The court shall order the rescission demanded, unless there are sufficient causes authorizing it to fix a period.

"This is understood without prejudice to the rights of third acquirers, in accordance with sections 1262 and 1265, and with the provisions of the mortgage law." Section 1091 of the Civil Code.

"The debtor shall lose all right to profit by the period:

"1.—If, after contracting the obligation it should appear that he is insolvent, unless he gives security for the debt.

"2.—If he does not give to the creditor the guaranties stipulated.

"3.—If by his own acts he should have reduced said guaranties after giving them, and if they disappear through a fortuitous event, unless they are immediately substituted by new ones equally safe." Section 1096 of the Civil Code.

The debtors having through their fault lost their right to pay within the agreed period, the right arose in the creditor to demand the immediate payment of the debt. Such is the remedy that he asserted in bringing this action. The facts and the law, therefore, are in his favor.